Elmer B. JENKINS, Petitioner,

v.

**MESA COUNTY DISTRICT COURT and James J. Carter, Chief Judge, Respondents.**

No. 80SA414.

Supreme Court of Colorado.

Dec. 8, 1980.

Skelton, Oviatt & O'Dell, Carolyn R. Miller, Wheat Ridge, for petitioner.

Warren F. Reams, Grand Junction, for respondents.

HODGES, Chief Justice.

In this original proceeding, Petitioner Elmer B. Jenkins, a protected person pursuant to an order of the respondent district court, entered in accordance with section 15–14–401, C.R.S. 1973, petitions for an order to compel respondents to change the venue of his conservatorship. His motion for a change of venue to the District Court of Jefferson County, his place of residence, was denied by respondent court. Petitioner also seeks an order requiring respondent court to release to his attorney his Last Will and Testament, which is deposited in respondent district court. We issued a rule to show cause why the relief sought should not be granted. We now make the rule absolute with regard to change of venue and discharge the rule as to release of the will.

I.

We first consider petitioner's request for a change of venue.

Petitioner is an eighty–four year old man. For nearly thirty years prior to March 1979, petitioner resided in Lakewood, Colorado (Jefferson County). Sometime after March 1, 1979, petitioner and his wife, Hellen Jenkins, went to Grand Junction, Colorado. The parties disagree about the nature of petitioner's presence in Grand Junction. Petitioner asserts that he was merely visiting his wife's cousin, Isabella Brown, who resided in Grand Junction. Respondents insist that petitioner intended to and did make Grand Junction his place of permanent residence.

While in Grand Junction, on April 14, 1979, petitioner fell ill and was hospitalized for seven days. After release from the hospital, petitioner returned to the home of Isabella Brown, where he remained until July 23, 1979, when he was again hospitalized until August 16, 1979. Petitioner was hospitalized a third time on November 26, 1979, and on February 1, 1980, petitioner was transferred from the hospital to a nursing home. Petitioner was discharged from the nursing home on July 29, 1980, and since has been residing in his Lakewood home.

Sometime after April 1, 1980, Isabella Brown contacted Warren F. Reams, a Grand Junction attorney, for assistance in handling petitioner's financial matters. Reams concluded that petitioner was a person in need of protection, and on July 8, 1980, Reams was issued Letters of Conservatorship in petitioner's estate by the Mesa County District Court.

On or about August 18, 1980, petitioner sought a change of venue of his conservatorship from the District Court of Mesa County to Jefferson County District Court, or, in the alternative, termination of the

conservatorship. A hearing on that motion was held in September before Judge Carter, who refused to rule until petitioner underwent psychiatric and medical examinations. Petitioner submitted to the tests, and on September 11, 1980, Judge Carter denied the motion to change venue.

■ Respondents do not dispute the fact that for approximately thirty years prior to March 1979, petitioner resided in Tefferson County. There is no dispute that petitioner owns a home in Jefferson County or that he has been residing in Jefferson County since his release from a Grand Junction nursing home in July 1980. The parties agree that sometime after March 1, 1979, petitioner went to Grand Junction. The only real disagreement is as to petitioner's purpose in going to that city.

The evidence concerning petitioner's intentions in going to Grand Junction is scant. However, petitioner has testified that he was merely visiting his wife's cousin when he was taken ill. An examination of the multitude of medical records filled out in Grand Junction during the period in question reveals that petitioner's address was invariably given as Lakewood. Nowhere in the record is there any positive evidence that petitioner intended to make Grand Junction his permanent home. The only evidence respondents have been able to point to as establishing petitioner's intention to reside in Grand Junction is petitioner's failure to return to Lakewood during those periods when he was not hospitalized.

We find respondents' arguments unpersuasive. In our view, the interests of justice would be best served if venue of the conservatorship is transferred to petitioner's place of residence. Therefore, pursuant to section 15–10–303(3), C.R.S. 1973, the respondent court is ordered to change venue to the District Court of Jefferson County.

## II.

With reference to the respondent court's refusal to release to the petitioner his Last Will and Testament, the following facts are pertinent.

Petitioner executed a Last Will and Testament on April 9, 1979 (1979 will). Following the death of petitioner's wife on July 24, 1980, and during the course of an inventory of Hellen Jenkins' estate, Reams located petitioner's 1979 will and, pursuant to an order of respondent Mesa County District Court, deposited the 1979 will with that court.

On August 8, 1980, petitioner executed a new Last Will and Testament. On August 11, 1980, petitioner, through his attorney, notified Reams, as conservator of petitioner's estate, that a new will had been executed. Petitioner's attorney requested return of the 1979 will so that it could be destroyed. Reams responded that the 1979 will had been deposited by him in the respondent district court.

On September 18, 1980, petitioner's Grand Junction counsel, pursuant to section 15–11–901, C.R.S.1973, presented to the deputy clerk of the district court a written request, signed by petitioner, for the 1979 will. The deputy clerk released the will to petitioner's counsel, subject to approval by Judge Carter. However, on September 19, 1980, Judge Carter ordered the 1979 will returned to the court, and the will was returned as ordered.

The 1979 will was deposited with the district court as ordered by that court pursuant to section 15–14–402(1)(a), C.R.S.1973. Thereafter, the deposited will could only be delivered to the testator personally or to a person authorized in a writing signed by the testator to receive that will. Section 15–11–901, C.R.S.1973. Here, however, the testator is a protected person.

■ The court has determined that petitioner is no longer able to manage his estate effectively, section 15–14–401(3), C.R.S. 1973, and has appointed a conservator to protect petitioner's property and safeguard the interests of petitioner, his dependents and his creditors. *See Hilliard v. McCrory*, 110 Colo. 369, 134 P.2d 1057 (1943). Preservation of the 1979 will is a matter related to the protection of petitioner's estate, and, consequently, the petitioner cannot, by a signed document or otherwise, authorize the

delivery of that will so long as he is the object of the protective order.[1] Therefore, the respondent district court acted properly in refusing to deliver the 1979 will to petitioner's counsel.

■ Refusal of respondent district court to release the 1979 will so that it could be destroyed has no effect on petitioner's right to execute a subsequent will. Retention by the district court does not mean that the 1979 will ultimately will be probated, nor does it indicate any judgment by the district court regarding petitioner's capacity to execute a valid will. *See In re McCrone's Estate*, 106 Colo. 69, 101 P.2d 25 (1940). Those are matters which must be determined in later proceedings. *See* section 15–12–407, C.R.S.1973.

The rule to show cause why the relief sought by the petitioner should not be granted is made absolute with reference to change of venue, and discharged as to the respondent court's refusal to release petitioner's 1979 Last Will and Testament.

---

1. We do not now decide whether the conservator of a protected person's estate could authorize the delivery of the will. We note, however, that section 15–11–901, C.R.S.1973, authorizes a conservator to only "examine a deposited will ... and to assure that it will be resealed and left on deposit after the examination," while section 15–14–408, C.R.S.1973, gives the court, through a conservator, "all the powers over ... [the protected person's] estate and affairs which he could exercise if present and not under disability...."